IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAPHNE RODENBAUGH, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 16-2158 |
| | : | |
| v. | : | |
| | : | |
| JUDGE SANTIAGO, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                                                                February 14, 2017

This action arises from the *pro se* plaintiff's arrest after she unsuccessfully attempted to use a hospital's telephone and obtain additional medical treatment while there. The plaintiff brought constitutional claims under 42 U.S.C. § 1983 against the officer that arrested her, the judge that presided over her guilty plea and sentencing, and a case manager and physician that interacted with her while she was incarcerated. The court previously dismissed the claims against the officer, the judge, and the physician at the pleading stage of this case. As such, the only remaining defendant is the case manager, who the plaintiff alleges deprived her of access to phone calls and mail, and prevented her from communicating with her attorney and the court.

Currently before the court is the case manager's motion to dismiss for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act, and for failure to state a claim, which the court converted to a motion for summary judgment because it relied on matters outside of the pleadings which the court could not properly consider on a motion to dismiss. In connection with converting the case manager's motion, the court granted the parties leave to submit any evidence relevant to (1) whether the plaintiff exhausted her administrative remedies, and (2) the plaintiff's underlying claims. The court received a supplemental submission by the

case manager, but did not receive anything from the plaintiff. After reviewing the applicable record, the court will grant summary judgment in favor of the case manager because there is no genuine issue of material fact regarding whether the plaintiff failed to exhaust her administrative remedies before filing this lawsuit.

## I.   FACTUAL AND PROCEDURAL HISTORY

The court previously set forth most of the factual and procedural history in this matter as follows:

> On April 25, 2015, the *pro se* plaintiff, Daphne Rodenbaugh ("Rodenbaugh") went to the emergency department at Sacred Heart Hospital ("Sacred Heart") to obtain treatment for severe blisters on her feet. Second Amended Complaint ("SAC") at 2, Doc. No. 19. Sacred Heart medical personnel provided her with a prescription for cream and told her to come back if she had further problems. *Id.* Rodenbaugh left Sacred Heart and attempted to make a phone call, but her cellular phone did not work, so she returned to Sacred Heart, informed the staff that she could barely walk, and asked if she could use the hospital's telephone located in the waiting room. *Id.* The staff at Sacred Heart did not permit Rodenbaugh to use the hospital's telephone, and Sacred Heart's security called the police.[1] *Id.* Jason Adduddell ("Adduddell"), a police officer for the city of Allentown, arrived and arrested Rodenbaugh. *Id.* Rodenbaugh was charged with violating 18 Pa. C.S. § 3503 (defiant criminal trespass), and because she was unable to post bail—which was set at $1500—Rodenbaugh was committed to the Lehigh County Jail pending arraignment. *See* Defendant Tracy Boandl Rule 12(b)(6) Mot. to Dismiss Pl.'s Second Am. Compl. ("Boandl MTD") at Ex. 1, Affidavit of Tracy Boandl ("Boandl Aff."), at Ex. A, Commitment Order, Doc. No. 22.
>
> On May 4, 2015, Rodenbaugh appeared before Lehigh County Magisterial District Judge Rashid Santiago for arraignment. SAC at 7; Boandl Aff. at Ex. B, Order Imposing Sentence ("Sentencing Order"). Based on a discussion between Judge Santiago, the "D.A. and others[,]" Rodenbaugh pleaded guilty to defiant criminal trespass because she believed she would be released in five days if she pleaded guilty instead of spending three months in jail awaiting trial if she pleaded not guilty. SAC at 2; Sentencing Order. Judge Santiago sentenced Rodenbaugh to "time served to 12 months, parole plan needed, SPORE supervision, fines suspended, pay costs." Sentencing Order. Rodenbaugh's sentence required that she have a parole plan in place with an address to which the Lehigh County Jail could release her. Boandl Aff. at ¶ 5. Rodenbaugh did not have such an address where she could be released. *Id.* During her incarceration,

---

[1] It is unclear why security called the police.

Rodenbaugh interacted with Tracy Boandl ("Boandl"), a Lehigh County Jail case manager assigned to her. SAC at 3, 5; Boandl Aff. at ¶ 2. Rodenbaugh believes that Boandl blocked her access to phone calls and mail, and prevented her from communicating with her attorney and the court. SAC at 3, 5. During her incarceration, Rodenbaugh also interacted with Dr. Alex Thomas ("Dr. Thomas"), a physician at the Lehigh County Jail. *Id.* at 9. On the second day of her incarceration, Rodenbaugh met with Dr. Thomas and stated, "I don't belong here." *Id.* Rodenbaugh believes that Dr. Thomas should have transferred her to a mental health institution at that point. *Id.*

On October 23, 2015, Judge Carol K. McGinley of the Court of Common Pleas of Lehigh County found that Rodenbaugh was severely mentally disabled and in need of treatment, and ordered that she be involuntarily treated at the Wernersville State Hospital. Boandl Aff. at Ex. E, Order for Involuntary Treatment. On November 23, 2015, Judge James T. Anthony of the Court of Common Pleas of Lehigh County ordered that Rodenbaugh be paroled to the Wernersville State Hospital, with an effective date of December 1, 2015. *Id.* at Ex. F, Order. Rodenbaugh was transferred to the Wernersville State Hospital on December 1, 2015. *Id*. at Ex. G, Discharge/Transfer Notification.

Rodenbaugh filed the instant lawsuit, apparently asserting claims under 42 U.S.C. § 1983 ("section 1983") against Judge Santiago, Adduddell, Boandl, and Dr. Thomas, and an application to proceed *in forma pauperis*, on February 17, 2016, in the Middle District of Pennsylvania. Complaint, Doc. Nos. 1-1, 1-2. On February 19, 2016, the Honorable Joseph F. Saporito, Jr. entered an order transferring Rodenbaugh's case to this court. Order at ECF pp. 3-4, Doc. No. 1.

This matter was not assigned to the undersigned until the Clerk of Court received the original record in this case on May 4, 2016. On May 12, 2016, the court entered an order (1) granting Rodenbaugh's motion for leave to proceed *in forma pauperis*, and (2) providing her with leave to file an amended complaint to clarify her allegations and to list all defendants in the caption of the pleading as required by Rule 10 of the Federal Rules of Civil Procedure. Order at 1, Doc. No. 2. On May 23, 2016, Rodenbaugh separately filed a motion seeking the appointment of counsel and an amended complaint in which she once again asserted claims against Judge Santiago, Adduddell, Boandl, and Dr. Thomas.

The court entered an order denying Rodenbaugh's motion for counsel without prejudice on June 8, 2016. Doc. No. 6. On June 30, 2016, after screening the amended complaint under 28 U.S.C. § 1915(e)(2), the court entered an order dismissing the claims against Judge Santiago with prejudice, and ordering the United States Marshal for the Eastern District of Pennsylvania to serve the summonses and the amended complaint upon the remaining defendants. Doc. No. 7.[2]

---

[2] As the court detailed in its June 30, 2016 order, Rodenbaugh's claim against Judge Santiago was based on his alleged misrepresentation about the amount of time that she would serve in jail if she pleaded guilty at her

3

> Adduddell filed motions to dismiss, to strike, and for a more definite statement on August 25, 2016. Doc. No. 11. Boandl filed a motion to dismiss the amended complaint on August 31, 2016. Doc. No. 13. Rodenbaugh filed a response to Adduddell's and Boandl's motions on September 27, 2016. Doc. No. 16. The court held oral argument on the motions on October 4, 2016. Doc. No. 18.
>
> On October 26, 2016, Rodenbaugh filed a second amended complaint ("SAC") against Judge Santiago, Adduddell, Boandl, and Dr. Thomas. On October 27, 2016, the court entered an order dismissing the claims in the SAC against Judge Santiago with prejudice, and denying Adduddell's and Boandl's motions to dismiss the amended complaint as moot based on the filing of the SAC. Doc. No. 20. Adduddell and Boandl separately filed motions to dismiss the SAC on November 8, 2016 and November 10, 2016, respectively. Doc. Nos. 21, 22. Rodenbaugh filed responses to the motions to dismiss on November 21, 2016. Doc. Nos. 24, 25. . . .

January 18, 2017 Mem. Op. ("Opinion") at 2-5 (footnote no. 2 omitted), Doc. No. 26.

On January 18, 2017, the court entered a memorandum opinion and order (1) dismissing the claims against Dr. Thomas with prejudice for the failure to state a claim, (2) granting Adduddell's motion to dismiss and dismissing the claims against him with prejudice, (3) denying Boandl's motion to dismiss without prejudice and converting it to a motion for summary judgment, and (4) notifying Boandl and Rodenbaugh that they had 20 days to file all relevant material relating to Boandl's motion.[3]  Doc. Nos. 26, 27. On February 6, 2017, Boandl filed an

---

arraignment. Order at 2, n.2. Rodenbaugh appeared to believe that this conduct supports a claim for false imprisonment against Judge Santiago. *Id.* Rodenbaugh's allegations with respect to Judge Santiago related to conversations that they had during a hearing on May 4, 2015. *Id.* Rodenbaugh did not allege that Judge Santiago lacked jurisdiction to sentence her or that he otherwise acted outside of his judicial capacity. *Id.* As such, the court concluded that there were no allegations that would satisfy any of the exceptions to absolute judicial immunity, and the court dismissed with prejudice the claims against Judge Santiago. *Id.* (citing *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)).

[3] The court dismissed Rodenbaugh's false arrest and violation of due process claims against Adduddell as barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Opinion at 11-12. The court determined that these claims were barred by the *Heck* doctrine because Rodenbaugh subsequently pleaded guilty to the same crime for which Adduddell arrested her. *Id.* The court dismissed Rodenbaugh's claim against Dr. Thomas for failing to transfer her from the Lehigh County Jail to a mental health institution, *sua sponte*, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because as an inmate properly serving a sentence, Rodenbaugh had no right to be let out or transferred to a different institution. *Id*.

In reviewing Boandl's motion to dismiss, the motion relied on affidavits of Warden Janine Donate of the Lehigh County Jail ("Warden Donate"), and Boandl. *Id*. at 14. The court could not properly consider these affidavits on a motion to dismiss, so in the interest of judicial efficiency, the court converted Boandl's motion to dismiss into a motion for summary judgment. *Id*. at 14-16.

addendum in support of her converted Rule 12(b)(6) motion to dismiss which re-raised the arguments set forth in her motion to dismiss as a motion for summary judgment. *See* Addendum to Def. Tracy Boandl's Rule 12(b)(6) Mot. and Brief which was Converted by the Court to a Mot. for Summ. J. by Order Dated Jan. 18, 2017 ("Boandl Addendum") at 2-6, Doc. No. 28. Rodenbaugh has filed no supplemental memoranda or documents, and has presented no evidence in support of her claims, whatsoever. The 20-days leave that the court granted the parties to file all material relevant to Boandl's motion has passed, and Boandl's motion to dismiss, which the court converted to a motion for summary judgment, is now ripe for disposition.

## II.   DISCUSSION

### A.   Standard – Motions for Summary Judgment

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning,* 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police,* 71 F.3d 480, 482 (3d Cir. 1995)). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

5

477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted); *see* Fed. R. Civ. P. 56(c) (stating that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .; or . . . [by] showing that the materials cited do not establish the absence . . . of a genuine dispute").  The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production.  *Anderson,* 477 U.S. 242, 252 (1986).  Bare assertions, conclusory allegations, or suspicions are insufficient to defeat summary judgment.  *See Fireman's Ins. Co. v. DuFresne,* 676 F.2d 965, 969 (3d Cir. 1982) (indicating that a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions"); *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (explaining that "speculation and conclusory allegations" do not satisfy the non-moving party's duty to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor.").  Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).  Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

The court "may not weigh the evidence or make credibility determinations." *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Petruzzi's IGA Supermarkets., Inc. v. Darling–Del. Co. Inc.*, 998 F.2d 1224, 1230 (3d Cir. 1993)).  Instead, "[w]hen considering

whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir. 2007). The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.,* 475 U.S. at 587 (citation omitted).

### B.     Analysis

Rodenbaugh's section 1983 claim against Boandl appears to assert violations of her rights under the First, Sixth, Eighth, and Fourteenth Amendments based on Boandl's alleged deprivation of her access to phone calls, mail, her attorney, and the court, while Rodenbaugh was incarcerated at the Lehigh County Jail.[4] SAC at 3, 5. Boandl's motion seeks dismissal of Rodenbaugh's claims for failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Boandl MTD at 4-8; Boandl Addendum at 3-5. The court will first consider whether summary judgment is proper based on Rodenbaugh's failure to exhaust her administrative remedies as required by the PLRA.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

---

[4] As further explained in the court's January 18, 2017 memorandum opinion, Rodenbaugh does not identify the precise constitutional amendments implicated by her allegations and, in some instances, does not specify the cause of action asserted. Opinion at 9, 13. As such, the court has endeavored to identify the amendments and causes of action. *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (explaining that courts must liberally construe *pro se* complaints and "apply the applicable law, irrespective of whether [the] litigant has mentioned it by name").

prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "Congress enacted the PLRA to reduce the quantity and improve the quality of prisoner suits." *Concepcion v. Morton*, 306 F.3d 1347, 1354 (3d Cir. 2002) (citations omitted).  It did so "largely in response to concerns about the heavy volume of frivolous prison litigation in the federal courts." *Alexander v. Hawk*, 159 F.3d 1321, 1326 n.11 (11th Cir. 1998) (citing 141 Cong. Rec. H14078–02, *H14105 (daily ed. Dec. 6, 1995)).

"[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  This means that "the determination whether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures." *Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010).  "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial[.]" *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004) (quoting *Nyhuis v. Reno*, 204 F.3d 65, 77-78 (3d Cir. 2000)).  Consequently, an inmate who fails to substantially comply with a prison's grievance procedures with respect to a claim addressing prison conditions is barred from subsequently litigating it in federal court.

Failure to exhaust administrative remedies is an affirmative defense that must be pleaded and proven by the defendant. *Small v. Camden County*, 728 F.3d 265, 268-69 (3d Cir. 2013) (citations omitted).  The failure to exhaust administrative remedies must be proven with respect to each of the prisoner's claims. *Id*. at 269 (citation omitted).  Therefore, summary judgment in favor of Boandl based on Rodenbaugh's failure to exhaust her administrative remedies is only appropriate if she produces "credible evidence—using any of the materials specified in Rule

8

56(c)—that would entitle [her] to a directed verdict if not controverted at trial." *Celotex Corp.*, 477 U.S. at 331 (citation omitted).

To prove that Rodenbaugh did not exhaust her administrative remedies with respect to her claims in this case, Boandl attached her own affidavit and an affidavit of Warden Donate, to her now converted motion to dismiss. Boandl's affidavit states that the Lehigh County Jail has an inmate grievance policy that went into effect on May 1, 2009. Boandl Aff. at ¶ 13. Pursuant to the grievance policy, an inmate must first attempt to resolve a grievance informally. *Id*. at ¶ 14. If the inmate is unable to resolve the grievance informally, then the grievance policy permits the inmate to file a formal grievance. *Id*. Boandl's affidavit further states that Rodenbaugh did not initiate, file, or request a grievance. *Id*. at ¶ 15. Warden Donate's affidavit provides a brief overview of the Lehigh County Jail grievance policy and states that Rodenbaugh never filed a formal grievance. Boandl MTD at Ex. 2, Affidavit of Janine Donate ("Donate Aff.") at ¶ 8, Doc. No. 22.

Despite the court's order instructing the parties to submit evidence relevant to Boandl's motion that the court has converted into a motion for summary judgment, Rodenbaugh has submitted no evidence in this matter whatsoever. Consequently, there is no evidence in the record to support Rodenbaugh's allegation that she "[f]iled a grievance request form 3 times." SAC at 3. Instead, the record contains affidavits of Boandl and Warden Donate establishing that Rodenbaugh did not file a grievance when she was an inmate at the Lehigh County Jail. Boandl Aff. at ¶ 15; Donate Aff. at ¶ 8. Therefore, there are no disputed material facts before the court with respect to whether Rodenbaugh complied with the Lehigh County Jail's grievance policy by pursuing an informal grievance or even by filing a formal grievance if she could not resolve the informal grievance. Having not pursued a grievance while incarcerated at the Lehigh County Jail, Rodenbaugh has failed to exhaust her administrative remedies as required by the PLRA with

respect to her claims against Boandl, and is now barred from bringing them in court. Consequently, summary judgment in favor of Boandl is proper.[5]

### III.  CONCLUSION

As explained above, the court has converted Boandl's motion to dismiss into a motion for summary judgment. The record currently before the court demonstrates that Rodenbaugh did not participate in either the informal or formal grievance procedure while housed at the Lehigh County Jail. Accordingly, the court will grant summary judgment in favor of Boandl because

---

[5] Having determined that summary judgement on Rodenbaugh's claims is proper because she failed exhaust her administrative remedies, the court need not address the merits of Rodenbaugh's causes of action. Nonetheless, even if the court was required to consider the merits of her claims, Boandl would still be entitled to summary judgment.

With respect to Rodenbaugh's claim that Boandl deprived her of access to phone calls and mail, the First Amendment, as incorporated by the Fourteenth Amendment, demands that "prisoners, by virtue of their incarceration, do not forfeit their First Amendment right to use of the mails." *Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006) (internal quotation marks and citation omitted). Thus, interference with an inmate's incoming or outgoing non-legal mail may amount to a denial the inmate's First Amendment rights provided that certain conditions are met. *Hamm v. Rendell*, 166 F. App'x 599, 603 (3d Cir. 2006) (citations omitted). The First Amendment also protects—subject to reasonable restrictions—a prisoner's right to telephone use as a means to communicate with people outside prison walls. *Almahdi v. Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009) (citing *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994)). The Eighth Amendment right to be free from cruel and unusual punishment may also be implicated if an inmate is arbitrarily denied telephone or visitation privileges. *See Cordero v. Warren*, 612 F. App'x 650, 653 (3d Cir. 2015) (citing *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003)); *cf. McDowell v. Litz*, 419 F. App'x 149, 152 (3d Cir. 2011) (holding that a 90-day suspension of telephone privileges did not constitute a violation of the Eighth Amendment).

With respect to Rodenbaugh's claim that Boandl denied her access to the court and her attorney, prisoners have a constitutional right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). Additionally, an inmate's right "to send and receive legal mail is uncontroverted and implicates both First and Sixth Amendment concerns, through the right to petition the government and the right of access to the courts." *Proudfoot v. Williams*, 803 F. Supp. 1048, 1052 (E.D. Pa. 1992). However, in order to prevail on a denial of access to courts claim, "a prisoner must show actual injury to a specific legal claim which sought to vindicate 'basic constitutional rights.'" *Williams v. Price*, 25 F. Supp. 2d 605, 616 (W.D. Pa. 1997) (citing *Lewis v. Casey*, 518 U.S. 343, 354 (1996)).

Here, Rodenbaugh has simply offered no evidence whatsoever that she was deprived of access to mail, phone calls, her attorney or the court while incarcerated at the Lehigh County Jail. Consequently, there is no evidence in the record to support these claims. Furthermore, the affidavits of Warden Donate and Boandl establish that Rodenbaugh did, in fact, have access to mail, phone calls, and her attorney while incarcerated. Boandl Aff. at ¶ 12; Donate Aff. at ¶¶ 6-7. Specifically, Warden Donate's affidavit states that Rodenbaugh was housed in the general population of the Lehigh County Jail, and had daily access to the phone in the housing unit to make phone calls. Donate Aff. at ¶ 6. Warden Donate's affidavit also states that Rodenbaugh had the ability to write and receive letters on a daily basis. *Id.* at ¶ 7. Boandl's affidavit states that Rodenbaugh had liberal telephone access and the ability to communicate with her attorney. Boandl Aff. at ¶ 12. This case is no longer at pleading stage, and the court cannot rely on Rodenbaugh's unsupported allegations. *Jones*, 214 F.3d at 407. Therefore, there are no disputed material facts with respect to whether Boandl blocked Rodenbaugh's access to mail, phone calls, her attorney or the court, and if the court was required to consider Rodenbaugh's claims on their merits, the court would enter judgment in favor of Boandl.

there is no genuine issue of material fact with respect to Rodenbaugh's failure to exhaust her administrative remedies as required by the PLRA.

    A separate order follows.

                                                     BY THE COURT:

                                                     /s/ *Edward G. Smith*
                                                     EDWARD G. SMITH, J.