IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAPHNE RODENBAUGH, :
:
            Plaintiff, : CIVIL ACTION NO. 16-2158
:
v. :
:
JUDGE SANTIAGO, JASON :
ADDUDDELL, TRACY BONDALL,[1] and :
ALEX THOMAS, :
:
            Defendants. :

### MEMORANDUM OPINION

Smith, J.                                                                                                                                                          July 6, 2017

     This action arises from the *pro se* plaintiff's arrest after she unsuccessfully attempted to use a hospital's telephone and obtain additional medical treatment while there. The plaintiff initially brought constitutional claims under 42 U.S.C. § 1983 against the officer that arrested her, the judge that presided over her guilty plea and sentencing, and a case manager and physician that interacted with her while she was incarcerated. The court previously dismissed the claims against the officer, the judge, and the physician. The case manager had also moved to have the court dismiss the claims against her because the plaintiff failed to state a claim upon which relief could be granted, and because she failed to exhaust her administrative remedies as required by the Prison Litigation Reform Act. The court converted the motion to dismiss to a motion for summary judgment because it relied on matters outside of the pleadings which the court could not properly consider on a motion to dismiss. In connection with converting the case manager's motion, the court granted the parties leave to submit any evidence relevant to (1)

---

[1] The plaintiff incorrectly spelled the defendant Tracy Boandl's last name in the caption of the complaint.

whether the plaintiff exhausted her administrative remedies, and (2) the plaintiff's underlying claims.

The court received a supplemental submission by the case manager, but received nothing from the plaintiff. After reviewing the applicable record, the court granted summary judgment in favor of the case manager, finding that the plaintiff had failed to file a grievance, and thus, there was no genuine issue of material fact regarding whether she failed to exhaust her administrative remedies before filing this lawsuit.

After the court granted summary judgment in favor of the case manager and dismissed this case, the plaintiff filed a motion for relief from the court's order dismissing the case, indicating that for medical reasons, she was unable to participate in discovery during the period of time provided by the court. After holding a hearing on the plaintiff's motion for relief from the court's order dismissing this case, the court reopened the case and granted the parties an additional 60 days to engage in discovery as to (1) whether the plaintiff exhausted her administrative remedies, and (2) the plaintiff's underlying claims. After the discovery period closed, the case manager filed a renewed motion for summary judgment. After reviewing the supplemental record, the court will again grant summary judgment in favor of the case manager because there is no genuine issue of material fact regarding whether the plaintiff failed to exhaust her administrative remedies prior to filing this lawsuit.

## I. FACTUAL AND PROCEDURAL HISTORY

The court previously set forth most of the factual and procedural history in this matter as follows:

> On April 25, 2015, the *pro se* plaintiff, Daphne Rodenbaugh ("Rodenbaugh") went to the emergency department at Sacred Heart Hospital ("Sacred Heart") to obtain treatment for severe blisters on her feet. Second Amended Complaint ("SAC") at 2, Doc. No. 19. Sacred Heart medical personnel

2

provided her with a prescription for cream and told her to come back if she had further problems. *Id.* Rodenbaugh left Sacred Heart and attempted to make a phone call, but her cellular phone did not work, so she returned to Sacred Heart, informed the staff that she could barely walk, and asked if she could use the hospital's telephone located in the waiting room. *Id.* The staff at Sacred Heart did not permit Rodenbaugh to use the hospital's telephone, and Sacred Heart's security called the police.[2] *Id.* Jason Adduddell ("Adduddell"), a police officer for the city of Allentown, arrived and arrested Rodenbaugh. *Id.* Rodenbaugh was charged with violating 18 Pa. C.S. § 3503 (defiant criminal trespass), and because she was unable to post bail—which was set at $1500—Rodenbaugh was committed to the Lehigh County Jail pending arraignment. *See* Defendant Tracy Boandl Rule 12(b)(6) Mot. to Dismiss Pl.'s Second Am. Compl. ("Boandl MTD") at Ex. 1, Affidavit of Tracy Boandl ("Boandl Aff."), at Ex. A, Commitment Order, Doc. No. 22.

On May 4, 2015, Rodenbaugh appeared before Lehigh County Magisterial District Judge Rashid Santiago for arraignment. SAC at 7; Boandl Aff. at Ex. B, Order Imposing Sentence ("Sentencing Order"). Based on a discussion between Judge Santiago, the "D.A. and others[,]" Rodenbaugh pleaded guilty to defiant criminal trespass because she believed she would be released in five days if she pleaded guilty instead of spending three months in jail awaiting trial if she pleaded not guilty. SAC at 2; Sentencing Order. Judge Santiago sentenced Rodenbaugh to "time served to 12 months, parole plan needed, SPORE supervision, fines suspended, pay costs." Sentencing Order. Rodenbaugh's sentence required that she have a parole plan in place with an address to which the Lehigh County Jail could release her. Boandl Aff. at ¶ 5. Rodenbaugh did not have such an address where she could be released. *Id.* During her incarceration, Rodenbaugh interacted with Tracy Boandl ("Boandl"), a Lehigh County Jail case manager assigned to her. SAC at 3, 5; Boandl Aff. at ¶ 2. Rodenbaugh believes that Boandl blocked her access to phone calls and mail, and prevented her from communicating with her attorney and the court. SAC at 3, 5. During her incarceration, Rodenbaugh also interacted with Dr. Alex Thomas ("Dr. Thomas"), a physician at the Lehigh County Jail. *Id.* at 9. On the second day of her incarceration, Rodenbaugh met with Dr. Thomas and stated, "I don't belong here." *Id.* Rodenbaugh believes that Dr. Thomas should have transferred her to a mental health institution at that point. *Id.*

On October 23, 2015, Judge Carol K. McGinley of the Court of Common Pleas of Lehigh County found that Rodenbaugh was severely mentally disabled and in need of treatment, and ordered that she be involuntarily treated at the Wernersville State Hospital. Boandl Aff. at Ex. E, Order for Involuntary Treatment. On November 23, 2015, Judge James T. Anthony of the Court of Common Pleas of Lehigh County ordered that Rodenbaugh be paroled to the Wernersville State Hospital, with an effective date of December 1, 2015. *Id.* at

---

[2] It is unclear why security called the police.

Ex. F, Order. Rodenbaugh was transferred to the Wernersville State Hospital on December 1, 2015. *Id*. at Ex. G, Discharge/Transfer Notification.

Rodenbaugh filed the instant lawsuit, apparently asserting claims under 42 U.S.C. § 1983 ("section 1983") against Judge Santiago, Adduddell, Boandl, and Dr. Thomas, and an application to proceed *in forma pauperis*, on February 17, 2016, in the Middle District of Pennsylvania. Complaint, Doc. Nos. 1-1, 1-2. On February 19, 2016, the Honorable Joseph F. Saporito, Jr. entered an order transferring Rodenbaugh's case to this court. Order at ECF pp. 3-4, Doc. No. 1.

This matter was not assigned to the undersigned until the Clerk of Court received the original record in this case on May 4, 2016. On May 12, 2016, the court entered an order (1) granting Rodenbaugh's motion for leave to proceed *in forma pauperis*, and (2) providing her with leave to file an amended complaint to clarify her allegations and to list all defendants in the caption of the pleading as required by Rule 10 of the Federal Rules of Civil Procedure. Order at 1, Doc. No. 2. On May 23, 2016, Rodenbaugh separately filed a motion seeking the appointment of counsel and an amended complaint in which she once again asserted claims against Judge Santiago, Adduddell, Boandl, and Dr. Thomas.

The court entered an order denying Rodenbaugh's motion for counsel without prejudice on June 8, 2016. Doc. No. 6. On June 30, 2016, after screening the amended complaint under 28 U.S.C. § 1915(e)(2), the court entered an order dismissing the claims against Judge Santiago with prejudice, and ordering the United States Marshal for the Eastern District of Pennsylvania to serve the summonses and the amended complaint upon the remaining defendants. Doc. No. 7.[3]

Adduddell filed motions to dismiss, to strike, and for a more definite statement on August 25, 2016. Doc. No. 11. Boandl filed a motion to dismiss the amended complaint on August 31, 2016. Doc. No. 13. Rodenbaugh filed a response to Adduddell's and Boandl's motions on September 27, 2016. Doc. No. 16. The court held oral argument on the motions on October 4, 2016. Doc. No. 18.

On October 26, 2016, Rodenbaugh filed a second amended complaint ("SAC") against Judge Santiago, Adduddell, Boandl, and Dr. Thomas. On October 27, 2016, the court entered an order dismissing the claims in the SAC against Judge Santiago with prejudice, and denying Adduddell's and Boandl's

---

[3] As the court detailed in its June 30, 2016 order, Rodenbaugh's claim against Judge Santiago was based on his alleged misrepresentation about the amount of time that she would serve in jail if she pleaded guilty at her arraignment. Order at 2, n.2. Rodenbaugh appeared to believe that this conduct supports a claim for false imprisonment against Judge Santiago. *Id.* Rodenbaugh's allegations with respect to Judge Santiago related to conversations that they had during a hearing on May 4, 2015. *Id.* Rodenbaugh did not allege that Judge Santiago lacked jurisdiction to sentence her or that he otherwise acted outside of his judicial capacity. *Id.* As such, the court concluded that there were no allegations that would satisfy any of the exceptions to absolute judicial immunity, and the court dismissed with prejudice the claims against Judge Santiago. *Id.* (citing *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)).

4

motions to dismiss the amended complaint as moot based on the filing of the SAC. Doc. No. 20. Adduddell and Boandl separately filed motions to dismiss the SAC on November 8, 2016 and November 10, 2016, respectively. Doc. Nos. 21, 22. Rodenbaugh filed responses to the motions to dismiss on November 21, 2016. Doc. Nos. 24, 25. . . .

January 18, 2017 Mem. Op. ("Opinion on MTD") at 2-5 (footnote no. 2 omitted), Doc. No. 26.

On January 18, 2017, the court entered a memorandum opinion and order (1) dismissing the claims against Dr. Thomas with prejudice for the failure to state a claim, (2) granting Adduddell's motion to dismiss and dismissing the claims against him with prejudice, (3) denying Boandl's motion to dismiss without prejudice and converting it to a motion for summary judgment, and (4) notifying Boandl and Rodenbaugh that they had 20 days to file all relevant material relating to Boandl's motion.[4] Doc. Nos. 26, 27. On February 6, 2017, Boandl filed an addendum in support of her converted Rule 12(b)(6) motion to dismiss which re-raised the arguments set forth in her motion to dismiss as a motion for summary judgment. *See* Addendum to Def. Tracy Boandl's Rule 12(b)(6) Mot. and Brief which was Converted by the Court to a Mot. for Summ. J. by Order Dated Jan. 18, 2017 ("Boandl Addendum") at 2-6, Doc. No. 28. . . .

February 14, 2017 Mem. Op. ("Opinion on MSJ") at 4-5, Doc. No. 29.

On February 14, 2017, the 20-days leave that the court granted the parties to file all material relevant to Boandl's motion having passed, and Rodenbaugh having filed no supplemental memoranda or evidence in support of her claims, the court entered a memorandum opinion and order granting summary judgment in favor of Boandl because there was no genuine issue of material fact with respect to Rodenbaugh's failure to exhaust her administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Doc. Nos. 29, 30. On February 22, 2017, Rodenbaugh filed a motion for relief from the court's

---

[4] The court dismissed Rodenbaugh's false arrest and violation of due process claims against Adduddell as barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Opinion [on MTD] at 11-12. The court determined that these claims were barred by the *Heck* doctrine because Rodenbaugh subsequently pleaded guilty to the same crime for which Adduddell arrested her. *Id*. The court dismissed Rodenbaugh's claim against Dr. Thomas for failing to transfer her from the Lehigh County Jail to a mental health institution, *sua sponte*, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because as an inmate properly serving a sentence, Rodenbaugh had no right to be let out or transferred to a different institution. *Id*.
  In reviewing Boandl's motion to dismiss, the motion relied on affidavits of Warden Janine Donate of the Lehigh County Jail ("Warden Donate"), and Boandl. *Id*. at 14. The court could not properly consider these affidavits on a motion to dismiss, so in the interest of judicial efficiency, the court converted Boandl's motion to dismiss into a motion for summary judgment. *Id*. at 14-16.

5

order granting Boandl's motion for summary judgment and dismissing the case. Doc. No. 31. Boandl filed a response in opposition to Rodenbaugh's motion on March 10, 2017. Doc. No. 33. After holding a hearing and oral argument on Rodenbaugh's motion for relief on March 16, 2017, the court entered an order, which (1) granted the motion to reopen and (2) directed the clerk of the court to re-open this case, (2) provided the parties with 60 days to complete limited discovery, and (3) set forth a schedule for Boandl to file a renewed motion for summary judgment and for the plaintiff to file a response to the motion.[5] Order, Doc. No. 35.

Rodenbaugh filed a motion to conduct polygraph exams of Boandl and Warden Janine Donate of the Lehigh County Jail ("Warden Donate"), in conjunction with their depositions, on April 5, 2017, which the court subsequently denied on April 6, 2017. Doc. Nos. 37-39. Rodenbaugh filed a motion for reconsideration of the court's order denying her motion to conduct polygraph exams on April 17, 2017, which the court subsequently denied on April 18, 2017. Doc. Nos. 40, 41.

Boandl timely filed a renewed motion for summary judgment on May 26, 2017. Doc. No. 42. Rodenbaugh timely filed a response in opposition to Rodenbaugh's renewed motion for summary judgment on June 7, 2017. Doc. No. 43. Boandl's renewed motion for summary judgment is now ripe for disposition.

## II. DISCUSSION

### A. Standard – Motions for Summary Judgment

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

---

[5] The court limited discovery in this matter to (1) whether Rodenbaugh exhausted the Lehigh County Jail's grievance procedures as to her claims that Boandl deprived her of access to telephone calls and mail and prevented her from communicating with her attorney and the court, and (2) whether Boandl deprived the plaintiff of access to telephone calls and mail, and prevented her from communicating with her attorney and the court. Order, Doc. No. 35.

Fed. R. Civ. P. 56(a). Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning,* 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police,* 71 F.3d 480, 482 (3d Cir. 1995)). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted); *see* Fed. R. Civ. P. 56(c) (stating that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .; or . . . [by] showing that the materials cited do not establish the absence . . . of a genuine dispute"). The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson,* 477 U.S. 242, 252 (1986). Bare assertions, conclusory allegations, or suspicions are insufficient to defeat summary judgment. *See Fireman's Ins. Co. v. DuFresne,* 676 F.2d 965, 969 (3d Cir. 1982) (indicating that a party opposing a motion for summary judgment may not "rely merely

7

upon bare assertions, conclusory allegations or suspicions"); *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (explaining that "speculation and conclusory allegations" do not satisfy the non-moving party's duty to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."). Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

The court "may not weigh the evidence or make credibility determinations." *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Petruzzi's IGA Supermarkets., Inc. v. Darling–Del. Co. Inc.*, 998 F.2d 1224, 1230 (3d Cir. 1993)). Instead, "[w]hen considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir. 2007). The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.,* 475 U.S. at 587 (citation omitted).

## B. Analysis

Rodenbaugh's section 1983 claim against Boandl appears to assert violations of her rights under the First, Sixth, Eighth, and Fourteenth Amendments based on Boandl's alleged deprivation of Rodenbaugh's access to phone calls, mail, her attorney, and the court, while she was incarcerated at the Lehigh County Jail.[6] SAC at 3, 5; Brief in Support of Mot. to Deny Summary J. and Sustain J. to Pl. ("Rodenbaugh Opp.") at 2, Doc. No. 43. Boandl's renewed motion seeks dismissal of Rodenbaugh's claims for failure to exhaust administrative remedies pursuant to the PLRA, and for insufficient evidence in the record to support Rodenbaugh's underlying section 1983 claim. *See* Brief in Support of Renewed Mot. for Summ. J. of Def., Tracy Boandl, Pursuant to Court Order Dated March 16, 2017 ("Boandl Renewed MSJ") at 6, Doc. No. 42-1. The court will first consider whether summary judgment is proper based on Rodenbaugh's failure to exhaust her administrative remedies as required by the PLRA.

The court previously set forth the applicable law governing exhaustion of administrative remedies pursuant to the PLRA in the February 14, 2017 Memorandum Opinion granting summary judgment in favor of Boandl, as follows:

> The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "Congress enacted the PLRA to reduce the quantity and improve the quality of prisoner suits." *Concepcion v. Morton*, 306 F.3d 1347, 1354 (3d Cir. 2002) (citations omitted). It did so "largely in response to concerns about the heavy volume of frivolous prison litigation in the federal courts." *Alexander v.*

---

[6] As further explained in the court's January 18, 2017 memorandum opinion, Rodenbaugh does not identify the precise constitutional amendments implicated by her allegations and, in some instances, does not specify the cause of action asserted. Opinion on MTD at 9, 13. As such, the court has endeavored to identify the amendments and causes of action. *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (explaining that courts must liberally construe *pro se* complaints and "apply the applicable law, irrespective of whether [the] litigant has mentioned it by name").

9

> *Hawk*, 159 F.3d 1321, 1326 n.11 (11th Cir. 1998) (citing 141 Cong. Rec. H14078–02, *H14105 (daily ed. Dec. 6, 1995)).
>
> "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This means that "the determination whether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures." *Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010). "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial[.]" *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004) (quoting *Nyhuis v. Reno*, 204 F.3d 65, 77-78 (3d Cir. 2000)). Consequently, an inmate who fails to substantially comply with a prison's grievance procedures with respect to a claim addressing prison conditions is barred from subsequently litigating it in federal court.
>
> Failure to exhaust administrative remedies is an affirmative defense that must be pleaded and proven by the defendant. *Small v. Camden County*, 728 F.3d 265, 268-69 (3d Cir. 2013) (citations omitted). The failure to exhaust administrative remedies must be proven with respect to each of the prisoner's claims. *Id.* at 269 (citation omitted). Therefore, summary judgment in favor of Boandl based on Rodenbaugh's failure to exhaust her administrative remedies is only appropriate if she produces "credible evidence—using any of the materials specified in Rule 56(c)—that would entitle [her] to a directed verdict if not controverted at trial." *Celotex Corp.*, 477 U.S. at 331 (citation omitted).

Opinion on MSJ at 7-9.

In examining whether Rodenbaugh properly exhausted her administrative remedies, the record shows that the Lehigh County Jail maintains an Inmate Grievance Policy (the "Grievance Policy"). The Grievance Policy first went into effect on May 1, 2009, was revised on November 21, 2012, and was revised again on August 10, 2015. *See* Boandl Renewed MSJ at Ex. 3, Aff. of Doug Mette ("Mette Aff.") at ¶ 3, Ex. 1, November 21, 2012 Lehigh County Prison Policy 2.3 – Inmate Grievances ("2012 Grievance Policy"), Ex. 2, August 10, 2015 Lehigh County Dept. of Corrections Policy 3.5.1.J – Inmate Grievances ("2015 Grievance Policy"); *see also* Boandl Renewed MSJ at Ex. 4, Aff. of John Donate ("John Donate Aff.") at ¶ 3. Since Rodenbaugh was incarcerated at the Lehigh County Jail from April 26, 2015 to December 31, 2015, the November 21, 2012 and August 10, 2015 revisions of the Grievance Policy were in effect during her

incarceration. Mette Aff. at ¶ 6. The November 21, 2012 and August 10, 2015 policies are nearly identical—with the only significant change between the revisions being to the numbering of the paragraphs in the policy. *Id.* at ¶ 3; 2015 Grievance Policy; 2012 Grievance Policy.

The Grievance Policy "provide[s] inmates with an administrative means for the expression of, and for the prompt review and resolution of, inmate problems and concerns." 2015 Grievance Policy at 1; 2012 Grievance Policy at 1. Pursuant to the Grievance Policy, inmates may submit grievances with respect to: "Classification[;] Food Service[;] Housing Unit operations[;] Inmate accounts[;] Library access[;] Medical access[;] Program access[;] Property (secured)[;] Staff actions[;] Telephones (non-collect)[; and] Visitation." 2015 Grievance Policy at 2; 2012 Grievance Policy at 2. Inmates may not submit grievances with respect to: "Collect phone system (separate process)[;] Informal Resolution Reports[;] Housing unit or cell assignment[;] Judicial decisions[;] Mail/books (separate process)[;] Misconducts/appeals (separate process)[;] Probation/parole issues[;] Property, issued (separate process)[; and] State and federal laws." *Id*.

Inmates may submit both informal and formal grievances, but the Grievance Policy requires that inmates first attempt to resolve a grievable issue through an informal grievance. Mette Aff. at ¶ 4; John Donate Aff. at ¶ 4; 2015 Grievance Policy at 3; *see also* 2012 Grievance Policy at 3. An informal grievance is "[a] grievance for which resolution is attempted with facility staff either verbally, or in writing via an 'Inmate Request to Staff.'" 2015 Grievance Policy at 2; 2012 Grievance Policy at 2. The informal grievance submission procedure is as follows:

1. An inmate shall attempt to resolve a grievance informally, with the appropriate and relevant staff member(s) (usually the staff member's supervisor), either verbally or in writing, using the "Inmate Request to Staff"

11

form. It is preferable that an inmate's concerns be resolved quickly and informally, rather than through the formal grievance process.

2. Staff shall attempt to resolve an informal grievance in an expeditious manner. Staff shall answer written informal grievances within 14 calendar days of receipt. If the inmate does not hear back from the staff member, any formal grievance submitted must still meet the submission deadline spelled out below.

3. Should the inmate be unable to resolve the grievance informally, he may submit a formal grievance per the procedure set forth below. The inmate shall include in the formal grievance submission facts relevant in the attempt to resolve the issue informally, such as names of staff members contacted, answers received from staff members, etc. Failure to attempt to resolve an issue informally is grounds for rejecting a formal grievance.

2015 Grievance Policy at 3; 2012 Grievance Policy at 3.

A formal grievance is "[a] grievance written on Lehigh County Prison's multi-part 'Inmate Formal Grievance, Part I' form." 2012 Grievance Policy at 1; 2015 Grievance Policy at 1. The formal grievance submission procedure is as follows:

1. To initiate a formal grievance, the inmate shall complete all required parts of the "Inmate Formal Grievance, Part I" form (Attachment 2). For formal grievances concerning allegations of sexual abuse, see Attachment 1.

2. In Block A of the form, the inmate shall clearly state what the grievance is. The inmate shall provide all the facts, such as what staff members are involved, when the event occurred which triggered the grievance, what actually happened, etc. The inmate shall not exceed the space provided in Block A and one additional one-sided 8 ½" x 11" piece of paper. The inmate shall sign and date the form in Block A.

3. In Block B of the form the inmate shall list what action the inmate took to resolve the grievance informally, before submitting the formal grievance. The inmate shall list by name the staff contacted and shall list any other action taken.

4. The inmate shall attach any relevant documentation. NOTE: Attached documents will not be returned, so make copies if you desire, before submitting the grievance.

5. The inmate shall keep the "Inmate copy" (gold copy) of the form and send the other copies to the Grievance Coordinator by placing the form in the "Inmate

> Request" box located on each housing unit. The inmate shall submit the form so the Grievance Coordinator receives the form no later than 21 calendar days from the event that triggered the grievance.
>
> 6. The inmate may withdraw a formal grievance by writing the Grievance Coordinator. Once the inmate has received an answer to the grievance the inmate cannot withdraw the grievance.

2015 Grievance Policy at 3-4; 2012 Grievance Policy at 3.

All formal grievances are forwarded to the grievance coordinator, who tracks the grievance at each step of the process, and may reject it if it is not submitted in accordance with the Grievance Policy. Provided that the grievance coordinator accepts the grievance, he or she "shall assign the grievance to an appropriate staff member for investigation and response or the [g]rievance coordinator may investigate and prepare the response." 2015 Grievance Policy at 4.[7] "The final response must be completed no later than 15 calendar days from the [g]rievance [c]oordinator's receipt of the formal grievance." *Id.* at 4-5. An inmate may appeal a formal grievance decision to the warden of the Lehigh County Jail. *Id.* at 5. "This is the only appeal available." *Id.* "At the conclusion of the appeal, administrative remedies will have been exhausted, as long as the grievance has not been rejected at any stage." *Id.* The Grievance Policy also expressly indicates that the PLRA requires an inmate to complete the administrative review process outlined in the Grievance Policy "as a pre-condition to bringing suit over the aggrieved issue in court." 2012 Grievance Policy at 1; 2015 Grievance Policy at 1.

As to whether Rodenbaugh participated in the Grievance Policy, on April 30, 2015, four days after Rodenbaugh was admitted to the Lehigh County Jail, Tracy Kester ("Kester"), a case manager, met with Rodenbaugh for her initial contact and inmate orientation review. *See* Boandl

---

[7] The copy of the 2012 Grievance Policy contained in the record is missing all pages after page three. Therefore, the court is unable to reference it when citing to certain sections of the policy. However, as previously stated, the uncontradicted evidence in the record is that with the exception of changes to the numbering of paragraphs, the 2012 Grievance Policy and 2015 Grievance Policy are nearly identical. Mette Aff. at ¶ 3.

Renewed MSJ at Ex. 6, Aff. of Tracy Kester ("Kester Aff.") at ¶ 2-3. As part of this orientation review, Kester thoroughly reviewed, *inter alia*, the Grievance Policy. Kester Aff. at ¶ 3. Specifically, Kester "reviewed and explained what the grievance process was, its importance to an inmate, where a copy of the policy could be obtained and how Daphne Rodenbaugh could obtain the formal grievance complaint forms." *Id*. at ¶ 4. At the end of the orientation review, Rodenbaugh signed a contact inmate orientation sign-off sheet, evidencing her review of, *inter alia*, the grievance process. *Id*. at ¶ 5 & Ex. 1, Initial Contact & Inmate Orientation.

The record shows that Rodenbaugh submitted two inmate request forms, one of which appears to be an informal grievance regarding, *inter alia*, her mail.[8] *See* Rodenbaugh Opp. at Ex. B, May 17, 2015 Inmate's Request to Staff ("First Inmate Request Form"); Rodenbaugh Opp. at Ex. B, May 29, 2015 Inmate's Request to Staff ("Second Inmate Request Form"). However, there is no evidence in the record that Rodenbaugh filed a formal grievance while incarcerated at the Lehigh County Jail. In sworn affidavits, Doug Mette ("Mette"), a treatment supervisor at the Lehigh County Jail, and John Donate ("Donate"), a Lieutenant at the Lehigh County Jail, who served as the inmate grievance coordinators during Rodenbaugh's period of incarceration, indicate that Rodenbaugh never filed a formal grievance when she was an inmate at the Lehigh County Jail. Mette Aff. at ¶ 9; John Donate Aff. at ¶ 9. Additionally, Boandl and Warden Donate also indicate, in sworn affidavits, that Rodenbaugh did not submit any formal grievances while incarcerated at the Lehigh County Jail. Boandl Aff. at ¶ 15; Boandl Renewed MSJ at Ex. 2, Aff. of Janine Donate at ¶ 8; Ex. 5, Aff. of Janine Donate - II at ¶¶ 5-7.

Rodenbaugh contends in her brief that she asked Boandl for an inmate grievance form to submit a formal grievance and Boandl would not provide her with one. Rodenbaugh Opp. at 3.

---

[8] The May 29, 2015 inmate request form also addresses personal property that Rodenbaugh apparently was maintaining in a storage unit at the time of her arrest, but that property is not relevant to Rodenbaugh's claims against Boandl in the instant case.

14

If true, this may except Rodenbaugh from the full and proper exhaustion requirement because it could have affected Rodenbaugh's access to the grievance procedure. *See Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (holding that a prisoner's failure to exhaust his administrative remedies was excused where prison officials refused to provide grievance forms) (citing *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) ("[A] remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a) . . . .") (alterations in original)); *Brown v. Croak*, 312 F.3d 109, 112-13 (3d Cir. 2002) (explaining that "[s]ection 1997e(a) only requires that prisoners exhaust such administrative remedies as are available" and, therefore, if the prisoner-plaintiff was correct that prison officials told him that he needed to wait until the termination of an investigation before he could file a formal claim yet never told him that they had completed the investigation, "the formal grievance proceeding . . . was never available to" the plaintiff (internal quotation marks omitted)). Rodenbaugh's contention, however, is not supported by the record.[9] In Boandl's answers to Rodenbaugh's interrogatories, and in her inmate progress notes for Rodenbaugh, Boandl indicates that Rodenbaugh requested two inmate grievance forms on August 24, 2015. Rodenbaugh Opp. at Ex. A, Answers to Interrogs. Directed to Tracy Boandl ("Boandl Interrogs. Answers") at ¶ 8, Ex. B, Inmate Progress Notes for Daphne Rodenbaugh ("Inmate Progress Notes") at August 24, 2015. Boandl also indicates that she subsequently forwarded the forms to Rodenbaugh. Boandl Interrogs. Answers at ¶ 8; Inmate Progress Notes. Because the record indicates that Rodenbaugh asked for and was provided inmate grievance forms, but never submitted them, she did not substantially comply with the Grievance Policy. Having not substantially complied with the Grievance Policy, Rodenbaugh has failed to exhaust her administrative remedies as required by the PLRA with respect to her

---

[9] Outside the assertion that Rodenbaugh makes in her brief, there is no evidence in the record that Boandl or any other staff members at the Lehigh County jail refused to provide inmate grievance forms to her.

claims against Boandl, and is now barred from bringing them in court. Consequently, summary judgment in favor of Boandl is proper.[10]

---

[10] Having determined that summary judgment on Rodenbaugh's claims is proper because she failed exhaust her administrative remedies, the court need not address the underlying merits of Rodenbaugh's causes of action. Nonetheless, even if the court was required to consider them, Boandl would still be entitled to summary judgment. The court addressed the underlying merits of Rodenbaugh's claims in the in the February 14, 2017 Memorandum Opinion granting summary judgment in favor of Boandl, as follows:

> With respect to Rodenbaugh's claim that Boandl deprived her of access to phone calls and mail, the First Amendment, as incorporated by the Fourteenth Amendment, demands that "prisoners, by virtue of their incarceration, do not forfeit their First Amendment right to use of the mails." *Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006) (internal quotation marks and citation omitted). Thus, interference with an inmate's incoming or outgoing non-legal mail may amount to a denial the inmate's First Amendment rights provided that certain conditions are met. *Hamm v. Rendell*, 166 F. App'x 599, 603 (3d Cir. 2006) (citations omitted). The First Amendment also protects—subject to reasonable restrictions—a prisoner's right to telephone use as a means to communicate with people outside prison walls. *Almahdi v. Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009) (citing *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994)). The Eighth Amendment right to be free from cruel and unusual punishment may also be implicated if an inmate is arbitrarily denied telephone or visitation privileges. *See Cordero v. Warren*, 612 F. App'x 650, 653 (3d Cir. 2015) (citing *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003)); *cf. McDowell v. Litz*, 419 F. App'x 149, 152 (3d Cir. 2011) (holding that a 90-day suspension of telephone privileges did not constitute a violation of the Eighth Amendment).

> With respect to Rodenbaugh's claim that Boandl denied her access to the court and her attorney, prisoners have a constitutional right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). Additionally, an inmate's right "to send and receive legal mail is uncontroverted and implicates both First and Sixth Amendment concerns, through the right to petition the government and the right of access to the courts." *Proudfoot v. Williams*, 803 F. Supp. 1048, 1052 (E.D. Pa. 1992). However, in order to prevail on a denial of access to courts claim, "a prisoner must show actual injury to a specific legal claim which sought to vindicate 'basic constitutional rights.'" *Williams v. Price*, 25 F. Supp. 2d 605, 616 (W.D. Pa. 1997) (citing *Lewis v. Casey*, 518 U.S. 343, 354 (1996)).

> Here, Rodenbaugh has simply offered no evidence whatsoever that she was deprived of access to mail, phone calls, her attorney or the court while incarcerated at the Lehigh County Jail. Consequently, there is no evidence in the record to support these claims. Furthermore, the affidavits of Warden Donate and Boandl establish that Rodenbaugh did, in fact, have access to mail, phone calls, and her attorney while incarcerated. Boandl Aff. at ¶ 12; Donate Aff. at ¶¶ 6-7. Specifically, Warden Donate's affidavit states that Rodenbaugh was housed in the general population of the Lehigh County Jail, and had daily access to the phone in the housing unit to make phone calls. Donate Aff. at ¶ 6. Warden Donate's affidavit also states that Rodenbaugh had the ability to write and receive letters on a daily basis. *Id.* at ¶ 7. Boandl's affidavit states that Rodenbaugh had liberal telephone access and the ability to communicate with her attorney. Boandl Aff. at ¶ 12. This case is no longer at pleading stage, and the court cannot rely on Rodenbaugh's unsupported allegations. *Jones*, 214 F.3d at 407. Therefore, there are no disputed material facts with respect to whether Boandl blocked Rodenbaugh's access to mail, phone calls, her attorney or the court, and if the court was required to consider Rodenbaugh's claims on their merits, the court would enter judgment in favor of Boandl.

## III.     CONCLUSION

As explained above, the record before the court demonstrates that Rodenbaugh did not file a formal grievance while housed at the Lehigh County Jail, and therefore, she did not substantially comply with the Lehigh County Jail's Grievance Policy. Accordingly, the court will grant summary judgment in favor of Boandl because there is no genuine issue of material fact with respect to Rodenbaugh's failure to exhaust her administrative remedies as required by the PLRA.

A separate order follows.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

Opinion on MSJ at 10 n.5. Because Rodenbaugh offers no new evidence in support of her contention that Boandl blocked her access to mail, phone calls, her attorney, or the court, the court's analysis of them remains unchanged.